Chavor Antwon GAMBLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00044–CR.

Court of Appeals of Texas, Waco.

Aug. 30, 2006.

Stan Schwieger, Waco, for appellant.

Roy Defriend, County Atty. for Limestone County, Groesbeck, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

### ABATEMENT ORDER

PER CURIAM.

Antwon Chavor Gamble pleaded guilty to robbery. A jury found that he had been previously convicted of a felony and assessed his punishment at sixty years' imprisonment. Gamble's counsel has filed an *Anders* brief contending that this appeal presents no issues of arguable merit. Gamble has filed a *pro se* brief raising twelve issues, and the State has filed a response to the *pro se* brief. Because our independent review of the record reveals at least one issue of arguable merit, we will abate this appeal for the appointment of new counsel.

Gamble was indicted for aggravated robbery. On the day of trial, he agreed to plead guilty to the lesser offense of robbery in exchange for the State's agreement to essentially abandon an allegation that Gamble used or exhibited a deadly weapon. As part of this agreement, which was reduced to writing and signed by Gamble, the court, and the attorneys, Gamble judicially confessed to the offense, "waived and abandoned" all pretrial motions, and waived any right to appeal on the issue of guilt/innocence. The State expressly reserved the right to use Gamble's confession and a prior federal conviction during the punishment phase.

When the court was informed that such an agreement may have been reached, the court asked the prosecutor to explain the agreement. The prosecutor explained the agreement's effect on the range of punishment and asked Gamble if he had discussed it with his attorney and if he understood it. Gamble answered affirmatively. The prosecutor then explained the agreement's effect on Gamble's motion to suppress and other pretrial motions then pending, which Gamble stated he understood. The prosecutor then reviewed Gamble's two prior felony convictions and explained that because of them Gamble was not eligible for community supervision. Gamble agreed that he had been convicted in those cases and stated that he understood that he was not eligible for community supervision as a result.

In response to a question from the court and after briefly consulting with his attorney, Gamble stated that he understood he was waiving his right to a hearing on the motion to suppress and appellate review of that motion as part of the agreement.

During the punishment phase, the State called Tami Small, an employee of RJ's Gameroom, who testified that Gamble came into the establishment on the date in

question waiving a "long gun" around. She told Gamble where the money bag was, and he took it and left. Small then locked the door and went out the back door to the owner's house located behind the store. The owner called 9-1-1 to report the robbery. Sheriff's deputies soon located Gamble. Small went to the deputies' location and identified Gamble as the robber. She also identified Gamble in court as the robber.

Small's niece was on the premises that night. She identified Gamble in court as the robber. The owner testified that both Small and her niece appeared terribly upset about the incident when they came to tell him what had happened.

After Gamble was arrested, he confessed to the crime and told the officers where he had hidden the money and where he had abandoned the pellet gun, the money bag, and a bandana he had worn during the robbery.

Gamble's mother testified for the defense that he helps her around the house and that his three sons need him at home. Gamble testified that he confessed and cooperated with authorities from the beginning because he hoped to get help with drug rehabilitation. He too testified that he "needs to be there" for his sons.

Counsel identifies one potential source of error, namely, that the trial court did not admonish Gamble in accordance with article 26.13 of the Code of Criminal Procedure.

Article 26.13 requires the court to admonish a defendant before accepting a guilty plea. TEX.CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp.2006). The admonishments to be given are:

(1) the applicable range of punishment;

(2) the fact that the prosecutor's punishment recommendation is not binding;

(3) the fact that the defendant must obtain the court's permission to appeal if the punishment does not exceed the prosecutor's recommendation, except on matters raised by written pretrial motion;

(4) the fact that, if the defendant is not a United States citizen, his guilty plea may result in deportation; and

(5) the fact that the defendant will be required to register as a sex offender if he is convicted of an offense which requires such registration.

*Id.*

■ Here, the second, third, and fifth admonishments do not apply because there was no punishment recommendation and Gamble was not convicted of a sex crime. *See Anderson v. State*, 182 S.W.3d 914, 917 (Tex.Crim.App.2006). Thus, Gamble's substantial rights were not affected by the court's failure to provide these admonishments. *See* TEX.R.APP. P. 44.2(b).

■ The trial court did not expressly admonish Gamble regarding the applicable range of punishment. However, the prosecutor generally explained the applicable punishment range to Gamble on the record at the court's direction and the attorneys covered the applicable punishment range at length during voir dire. Thus, Gamble's substantial rights were not affected by the court's failure to admonish him regarding the range of punishment. *See Aguirre–Mata v. State*, 125 S.W.3d 473, 476–77 (Tex.Crim.App.2003).

■ Neither did the court admonish Gamble regarding the deportation consequences of a guilty plea. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(4). This was error. *See Carranza v. State*, 980 S.W.2d 653, 656 (Tex.Crim.App.1998); *Song Sun Hwang v. State*, 130 S.W.3d 496, 498 (Tex. App.-Dallas 2004, pet. ref'd). To determine whether the court's failure to admon-

ish Gamble requires reversal under Rule 44.2(b), we must ask, "considering the record as a whole, do we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him?" *Anderson,* 182 S.W.3d at 919.

■ If the record affirmatively reflects that Gamble is a United States citizen, the error would be harmless. *See id.* Conversely, if the record affirmatively reflects that he is not a citizen, the error would require reversal. *See Carranza,* 980 S.W.2d at 658.

Appellant's counsel cites the decision of the San Antonio Court in *Garza v. State* for the proposition that, because the record does not affirmatively show that the trial court's failure to admonish Gamble on the deportation consequences harmed him, we must conclude that he was not harmed by such failure. 2 S.W.3d 331, 334 (Tex. App.-San Antonio 1999, pet. ref'd); *see also Gorham v. State,* 981 S.W.2d 315, 319 & n. 6 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). In *Garza,* the San Antonio Court held that the defendant was not harmed by a failure to admonish on the deportation consequences because *"[the defendant] did not show* that she was unaware of the consequences of her plea or that she was misled or harmed." *Garza,* 2 S.W.3d at 334 (emphasis added); *see also Gorham,* 981 S.W.2d at 319 n. 6 ("If not otherwise reflected in the record, *a defendant may establish* his foreign citizenship by way of a motion for new trial or by filing an application for writ of habeas corpus.") (emphasis added).

■ This observation, however, appears inconsistent with the now-settled principle that neither party bears a burden on the issue of harm.

Neither the appellant nor the State have any formal burden to show harm or harmlessness under Rule 44.2(b).

[N]either the State nor appellant must demonstrate harm when [a non-constitutional] error has occurred. Rather, it is the appellate court's duty to assess harm after a proper review of the record. Accordingly, a conviction must be reversed on direct appeal if the record shows that a defendant was unaware of the consequences of his plea and that he was misled or harmed by the trial court's failure to admonish him regarding the range of punishment.

Thus, a reviewing court must independently examine the record for indications that a defendant was or was not aware of the consequences of his plea and whether he was misled or harmed by the trial court's failure to admonish him of the punishment range.

*Burnett v. State,* 88 S.W.3d 633, 638 (Tex. Crim.App.2002) (footnotes omitted);[1] *accord Anderson,* 182 S.W.3d at 918.

Applying *Burnett* to Gamble's case, we "must independently examine the record for indications that [Gamble] was or was not aware of the [deportation] consequences of his plea and whether he was misled or harmed by the trial court's failure to admonish him of the [deportation consequences]." *See Burnett,* 88 S.W.3d at 638.

Because the record is silent on this issue, we may infer that Gamble was not aware of the deportation consequences. *Id.* Gamble's mother testified that she had lived in Mexia "a long time." Gamble

---

1. The second paragraph of this quoted excerpt from *Burnett* purports to be a quotation from *Carranza v. State. See Burnett v. State,* 88 S.W.3d 633, 638 & n. 14 (Tex.Crim.App. 2002) (citing *Carranza,* 980 S.W.2d 653, 658 (Tex.Crim.App.1998)). However, this language does not appear in *Carranza.*

testified that he resides in Mexia and that he completed tenth grade. Perhaps it could be inferred from this testimony that Gamble is a citizen. Perhaps not.

■ When conducting a harm analysis, if this court "has 'a grave doubt' that the result [of the underlying proceeding] was free from the substantial influence of the error, then it must treat the error as if it [had a substantial influence on the outcome]." *Id.* at 637. Stated another way, "in cases of grave doubt as to harmlessness the petitioner must win." *Id.* at 638 (quoting *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995)).

In the face of a silent record, we harbor grave doubts as to whether Gamble was harmed by the court's failure to admonish him of the deportation consequences of his plea. Therefore, this appeal presents at least one issue of arguable merit. Accordingly, we will abate this appeal for the appointment of new counsel. *See Perryman v. State,* 159 S.W.3d 778, 779 (Tex. App.-Waco 2005, order) (per curiam).

Appellant's new counsel should personally review the record to determine what issues should be raised in this appeal, including whether the issue identified by this Court should be raised, and if not, why the issue identified has no arguable merit. *Id.*

### Conclusion

We abate this appeal for the appointment of new counsel.[2] *Id.* The trial court's order appointing new appellate counsel must be filed with the Clerk of this Court in a supplemental clerk's record within fifteen (15) days after the date of this Order. Counsel's brief is due thirty (30) days after appointment.

Chief Justice GRAY believes this abatement order is an unnecessary waste of taxpayer resources. He would affirm the trial court's judgment.

---

2. Gamble's present counsel has already filed a motion to withdraw with the trial court.