COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-050-CR

 

 



JESSE
SLAUGHTER                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

      FROM THE 16TH
JUDICIAL DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








Appellant Jesse Slaughter raises seven issues
challenging his conviction for possession of more than four grams but less than
two hundred grams of methamphetamine.  In
issues one through six, Slaughter challenges the voluntariness of his guilty
plea, contending that the trial court erred by failing to apprise him of the
constitutional rights waived by his guilty plea and by failing to provide him
with certain statutorily required admonishments.  In issue seven, Slaughter contends that his
trial counsel was ineffective.  We will
affirm.

II.  Factual
Background

Denton County Sheriff Officer Shane Norie
initially arrested Slaughter for possessing methamphetamine on November 16,
2005, and a grand jury subsequently indicted him for possession of more than
four grams but less than two hundred grams of methamphetamine.  Slaughter then failed to appear for his
arraignment, and the trial court issued a warrant for his arrest. 

Eventually, voir dire commenced in the trial on
the Denton County charges, and a jury was empaneled.  While the jury waited in the jury room, the trial
court conducted a hearing on Slaughter=s motion
to suppress.  Slaughter moved to suppress
the evidence collected from a backpack that he had carried into a hotel room,
alleging that the officers lacked probable cause to search the backpack.  After the suppression hearing, the trial
court denied the motion. 

Immediately after the trial court stated on the
record that it was denying Slaughter=s motion
to suppress, Slaughter=s counsel asked to approach the
bench, and an off-the-record discussion occurred.  Afterward, the trial court read Slaughter the
charges against him, and Slaughter then entered a plea of guilty to the offense
of possession of a controlled substance. 
He later pleaded guilty in open court before the jury.  








The record does not expressly show that the trial
court provided Slaughter with any warnings or admonishments at the time
Slaughter pleaded guilty.  Instead, after
Slaughter entered his plea before the jury, the trial proceeded straight to
opening statements in the punishment phase. 
Trial counsel told the court that he had no objection to the proposed
written jury charge, and when the trial court orally charged the jury, trial
counsel likewise offered no objection to the following language:

[Slaughter] has persisted in entering his plea of guilty,
notwithstanding that the Court, as required by law, has admonished him of the
consequences.  It plainly appearing to
the Court that the defendant is mentally competent, and that he is not
influenced to make said plea by any consideration of fear, persuasion, or any
delusive hope of pardon prompting him to confess his guilt, his plea is by the
Court received. 

 

At the conclusion of the punishment phase, the
jury assessed Slaughter=s punishment at twenty-three
years in prison, and the trial court sentenced him accordingly.  This appeal followed. 

III.  Waiver of Rights With Guilty Plea








In his first five issues, Slaughter contends that
the trial court erred by failing to inform him of the waiver of his
constitutional rights as required by the mandates of Boykin v. Alabama,
395 U.S. 238, 89 S. Ct. 1709 (1969).  In his sixth issue, Slaughter contends that
the trial court erred by failing to admonish him as required by the Texas Code
of Criminal Procedure.  See Tex. Code Crim. Proc. Ann. art. 26.13
(Vernon Supp. 2006).  Whether a trial
court has complied with article 26.13 and whether it has complied with Boykin
are two separate questions.  Gardner v. State, 164 S.W.3d 393, 398
(Tex. Crim. App. 2005) (citing Aguirre‑Mata v. State, 125 S.W.3d
473, 474-77 (Tex. Crim. App. 2003)). 
Accordingly, we will address these two questions separately.

A.     Constitutional Due Process

Slaughter contends that the trial court violated
his constitutional right to due process by failing to warn him that his right
to a trial by jury, right to confront his accusers, and right against
self-incrimination would all be waived by his plea of guilty.  Slaughter asserts that the trial court=s
failure to warn him prevented it from determining on the record whether his
guilty plea was intelligently and voluntarily given.

1.     Boykin Requirements








In Boykin, the Supreme Court mentioned
three constitutional rights that a guilty plea waives:  the privilege against compelled self‑incrimination,
the right to a jury trial, and the right to confront one=s
accusers.  Boykin, 395 U.S. at
243, 89 S. Ct. at 1712; Gardner, 164 S.W.3d at 399.  A violation of these due process rights
occurs when a trial court accepts a plea of guilty without an affirmative
showing Aspread
on the record@ that the guilty plea was Aintelligent
and voluntary.@  Aguirre‑Mata, 125 S.W.3d at 474
(quoting  Boykin, 395 U.S. at 242,
89 S. Ct. at 1711-12).  Boykin
did not specifically set out what due process requires to be Aspread
on the record@ except to say generally that
state courts should make sure that a guilty‑pleading defendant Ahas a
full understanding of what the plea connotes and of its consequence.@  Id. at 475 (quoting Boykin, 395
U.S. at 244, 89 S. Ct. at 1712).  The
trial court commits reversible error if the record does not reflect that a
defendant fully understands the plea=s
connotations and its consequences.  Boykin,
395 U.S. at 244, 89 S. Ct. at 1712.

The Supreme Court has set the standard for the
voluntariness of guilty pleas as follows:

A
plea of guilty entered by one fully aware of the direct consequences, including
the actual value of any commitments made to him by the court, prosecutor, or
his own counsel, must stand unless induced by threats (or promises to
discontinue improper harassment), misrepresentation (including unfulfilled or
unfulfillable promises), or perhaps by promises that are by their nature
improper as having no proper relationship to the prosecutor=s business (e.g.,
bribes).

 

Brady v. United States, 397
U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970) (citing Shelton v. United States,
246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev=d on
confession of error on other grounds, 356 U.S. 26 (1958)). 








The voluntariness of a plea can
be determined only by considering all of the relevant circumstances surrounding
it.  Brady, 397 U.S. at 749, 90 S.
Ct. at 1469.  As such, voluntariness may
be inferred from the record based on statements made by a defendant=s
counsel.  Gardner, 164 S.W.3d at
399 (holding guilty plea to be voluntary where defendant=s
counsel made statements during punishment phase mentioning that defendant would
testify despite his Fifth Amendment protections, that guilty plea was saving
jury from the Agrueling experience@ of
determining defendant=s guilt, and that child victim
would not have to testify). 
Voluntariness may also be inferred when a guilty plea is shown to be
part of the defendant=s trial strategy.  Id. (finding guilty plea to be part of
a strategy to persuade the jury to be lenient); see also Boykin, 395
U.S. at 240, 89 S. Ct. at 1709 (recognizing that trial strategy may make guilty
plea the desired course of action).  A
trial court does not commit per se reversible error by failing to specifically
inform the defendant of each right he is waiving by pleading guilty.  See Gardner, 164 S.W.3d at 394-95,
399-400 (upholding guilty plea despite trial court=s
failure to explicitly warn defendant). 
Instead, in determining whether a plea is voluntary, the focus is upon
whether the record shows that the defendant understood that he was waiving the
rights when he pleaded guilty.  Id.

2.     The Gardner Case








In Gardner, the appellant
claimed on direct appeal that his guilty Aplea was
involuntary and a violation of his federal due process rights because the
[trial] court failed to admonish him of his various constitutional rights and
determine that his plea was intelligently and voluntarily made.@  Id. at 397.  Because his case involved a complete absence
of admonishments,[2]
the appellant in Gardner argued that his guilty plea was invalid under Boykin
and contended that the record did not affirmatively show that he understood the
nature of the constitutional due process protections that he was waiving when
he pleaded guilty.  Id. at
397-98.  The Texas Court of Criminal
Appeals held that the record in Gardner adequately showed that the
appellant understood that he was waiving his rightsCthe
privilege against compelled self-incrimination, the right to a jury trial, and
the right to confront his accusersCwhen he
pleaded guilty.  Id. at 399.  In reaching its holding, the Texas Court of
Criminal Appeals said that the appellant=s
understanding that he was waiving his rights








[m]ay
be inferred, in part, from appellant=s counsel=s statements during the punishment phase
mentioning that appellant would testify even though he did not have to under
the Fifth Amendment and that appellant=s guilty plea saved the victim from having to
testify and saved the jury from the Agrueling experience@ of determining appellant=s guilt. . . .

 

The
voluntary nature of appellant=s guilty plea is further shown in the record by
the overwhelming evidence that appellant=s guilty plea was part of a strategy (which we
may also infer was done in consultation with competent counsel) to persuade the
jury to grant appellant probation.

 

Id. 
Thus, the Texas Court of Criminal Appeals in Gardner looked at
the punishment phase in determining whether the appellant understood the nature
of the rights he was waiving by pleading guilty in the guilt-innocence phase.

3.     Slaughter=s Guilty
Plea

In this case, as mentioned
above, Slaughter pleaded guilty before the judge and then again in open court
before the jury.  The trial court did not
question Slaughter on the record regarding his decision to plead guilty.  Nonetheless, the record demonstrates that
Slaughter=s plea of guilty was made
knowingly and voluntarily.













The record contains no inference
of threats, misrepresentation, or improper promises, nor does Slaughter contend
that such improprieties occurred.  See
Brady, 397 U.S. at 755, 90 S. Ct. at 1472. 
The sequencing of Slaughter=s guilty
pleaCafter a
venire panel had been voir dired on guilt-innocence and a jury had been
empaneledCindicates Slaughter=s
understanding that he was waiving his right to have the empaneled jury try him
on guilt-innocence and was waiving his right to confront his accusers, i.e., to
have the State put on its evidence against him. Additionally, statements made
by Slaughter=s counsel provide an inference
that Slaughter understood that he was waiving these rights when he pleaded
guilty.[3]  See Gardner, 164 S.W.3d at 399 (using
appellant=s trial counsel=s statements
during punishment to demonstrate that appellant understood he was waiving
rights when he pleaded guilty during guilt-innocence phase).  Finally, the record reflects that Slaughter=s trial
counsel=s
strategy all along was to enter a plea of guilty if his motion to suppress was
denied.  See id.

Slaughter did not testify at
guilt-innocence, so his waiver of his right to remain silent at guilt-innocence
was not called into play.  Although a
criminal defendant retains the Fifth Amendment right to remain silent and avoid
compelled self-incrimination at his sentencing hearing, even after a plea of
guilty, see Mitchell v. United States, 526 U.S. 314, 326-27, 119 S. Ct.
1307, 1314 (1999), Slaughter specifically waived that right on the record.  Slaughter=s
counsel also noted that, AYou=re going
to meet Jesse, get a chance to hear him speak to you.@  Slaughter=s
counsel told the jury that Slaughter would be explaining his life story to the
jury.  And finally, outside the jury=s
presence before Slaughter testified at the punishment phase, the trial court
asked him several times whether he understood that he was not required to
testify:

THE
COURT:  All right.  Mr. Slaughter, before I allow you to testify,
I need to make sure that you understand that you are not required to testify
here against yourself.  You understand
that?

 

THE
DEFENDANT:  Yes, sir. [sic]

 

THE
COURT:  You understand that the State can=t call you as a witness?

 

THE
DEFENDANT:  Yes, ma=am.

 








THE
COURT: And you understand that I can=t let your attorney call you as a witness unless
you tell me that you understand your right to remain silent and that you wish
to waive it.  Do you understand that?

 

THE
DEFENDANT:  Yes, sir. [sic]

 

THE
COURT:  All right.  Now, obviously there=s a court reporter here
taking down your testimony and your responses to any questions.  You=ll be subject to cross-examination.  Knowing that, do you still wish to testify?

 

THE
DEFENDANT:  Yes, I do.

 

THE COURT:  All right. 

Despite these warnings, Slaughter testified
without objection during the punishment phase. 
Thus, the record reflects that Slaughter understood that he was waiving
his Fifth Amendment right against self-incrimination during the punishment
phase. 








After reviewing the record, which
closely tracks Gardner, we hold that there was an affirmative showing Aspread
on the record@ that Slaughter had a full
understanding of the consequences of his guilty plea.[4]  See Boykin, 395 U.S. at 244; See
Aguirre-Mata, 125 S.W.3d at 475. 
Thus, the trial court did not commit reversible error by failing to
expressly warn Slaughter of these waivers. 
Boykin, 395 U.S. at 244. 
Accordingly, we overrule Slaughter=s first
five issues. 

B.     Article 26.13 Admonishments








In his sixth issue, Slaughter
asserts that the trial court=s
failure to provide him with the admonishments required by article 26.13 of the
Texas Code of Criminal Procedure requires that his conviction be reversed.  Article 26.13 requires the trial court to
admonish the defendant of the following:  (1) the range of
punishment, (2) the effects of a plea bargain agreement, (3) possible
deportation upon conviction on a noncitizen, and (4) requirements for
registration as a sex offender.  Tex. Code Crim. Proc. Ann. art. 26.13
(Vernon Supp. 2006).  Neither
party disputes the trial court=s
failure to admonish Slaughter in open court in accordance with article 26.13.[5]  This type of error is nonconstitutional and
is subject to a harm analysis under Rule 44.2(b). Aguirre‑Mata,
125 S.W.3d at 474.

1.     Harmless Error Standard








With nonconstitutional error, we
apply rule 44.2(b) and disregard the error if it did not affect Slaughter=s
substantial rights.  See Tex. R. App. P. 44.2(b); Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In making this determination, we
review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  Accordingly, in applying rule 44.2(b) to the
failure to give an admonition we must determine, by considering the record as a
whole, whether we have a fair assurance that the defendant=s
decision to plead guilty would not have changed had the court admonished him.  Anderson v. State, 182 S.W.3d 914, 919
(Tex. Crim. App. 2006).

2.     Applicability of Article 26.13

A trial court need not inform
the defendant of each admonishment if the admonishment is inapplicable to the
case.  See id. at 916 (noting that
admonishment regarding plea bargain was unnecessary when a jury was empaneled
to assess the punishment).  A failure to
admonish regarding the range of punishment is harmless when the defendant has
full knowledge of the applicable punishment range based on voir dire examination.
 Gamble v. State, 199 S.W.3d 619,
622 (Tex. App.CWaco 2006, no pet.); see also
Aguirre‑Mata, 125 S.W.3d at 476-77 (AThe
record contains references to the correct punishment range and there is nothing
in the record that shows appellant was unaware of the consequences of his plea
. . . .@).








Several of the admonishments contained
in article 26.13 are inapplicable to Slaughter=s
case.  First, a jury assessed Slaughter=s
punishment, and therefore no plea bargain existed.  Thus, no harm resulted from a failure to
admonish about plea agreements.  See
Anderson, 182 S.W.3d at 916. 
Second, the record reflects that Slaughter was born in Texas, thereby
making him a United States citizen. 
Accordingly, no harm resulted from a failure to admonish about deportation.
 Third, Slaughter=s
offense of possession of a controlled substance is not an offense which
requires registration as a sex offender. 
See Tex. Code Crim. Proc.
Ann. art. 62.001(5) (Vernon 2006). 
Thus, no harm resulted from the trial court=s
failure to admonish him regarding sex offender registration. 

Finally, both the State and
Slaughter discussed the range of punishment during voir dire.  The State mentioned that the range of
punishment for this particular offense, a second-degree felony, was two to
twenty years in prison with a potential fine of up to $10,000.  The State also explained that a prior felony
conviction can enhance a second-degree felony to the level of a first-degree
felony, thereby making the punishment five years to life.  Several questions about the potential
punishment followed.  When Slaughter
later examined the potential jurors, he specifically focused on the range of
punishment by asking jurors if they could send a man to prison for five years
to life.  Based on both the State=s and
Slaughter=s voir dire examinations,
Slaughter should have known of the potential range of punishment.  Thus, Slaughter was not harmed by the trial
court=s
failure to admonish him about the range of punishment at the time he pleaded
guilty.  See Gamble, 199
S.W.3d at 622; see also Aguirre‑Mata, 125 S.W.3d at 476-77. 








As demonstrated above, most of
the admonishments set forth in article 26.13 do not apply to the facts of this
case; the one requirement that doesCadmonishment
about the range of punishmentCwas
discussed in voir dire by both the State and Slaughter.  For these reasons, we have a fair assurance
that Slaughter=s decision to plead guilty would
not have changed, and he does not argue that it would have changed, had the
trial court admonished him.  See
Anderson, 182 S.W.3d at 919.  As
such, we hold that, in the context of the entire case against Slaughter, the
trial court=s error in failing to admonish
Slaughter did not have a substantial or injurious effect on the jury=s
verdict and did not affect Slaughter=s
substantial rights.  See King, 953
S.W.2d at 271.  Thus, we disregard the
error.  See Tex. R. App. P. 44.2(b).  We overrule Slaughter=s sixth
issue.

IV.  Ineffective
Assistance of Counsel








In his seventh issue, Slaughter
argues that he was denied his fundamental right to effective assistance of
counsel due to his trial counsel=s
cumulative errors.  Specifically,
Slaughter contends that his trial counsel (1) failed to object to the statement
in the jury charge that Slaughter had been admonished, (2) failed to file a
motion to suppress articulating the current case law regarding the suppression
issue and failed to file a motion to compel disclosure of confidential
informants, (3) failed to conduct effective pretrial investigation, (4) failed
to prepare for trial, (5) failed to properly investigate the case by not
determining the background of the other individuals who were in contact with
law enforcement, and (6) failed to subpoena any witnesses to testify on
Slaughter=s behalf.  Of these alleged errors, Slaughter argues
that one stands out above the rest: 
trial counsel=s failure to object to the jury
charge regarding the admonishment and move for a mistrial.  

To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).








In evaluating the effectiveness
of counsel under the first prong, we look to the totality of the representation
and the particular circumstances of each case. 
Thompson, 9 S.W.3d at 813. 
The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation
is highly deferential, and the reviewing court indulges a strong presumption
that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813-14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. 
(quoting Thompson, 9 S.W.3d at 813).

The second prong of Strickland
requires a showing that counsel=s errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
whose result is reliable.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2064. 
In other words, an appellant must show there is a reasonable probability
that, but for counsel=s unprofessional errors, the
result of the proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.








Our review of the record reveals
that Slaughter received a pretrial hearing on his motion to suppress.  Slaughter=s
arguments that his trial counsel failed to obtain the names of confidential
informants and subpoena them are without merit. 
The record demonstrates that, unlike the federal case pending against
Slaughter, the drug charges that Slaughter was on trial for in Denton County
did not involve the use of a confidential informant.  During voir dire, Slaughter=s trial
counsel stated outside the jury=s
presence that the State had turned over all discovery to him and that he
believed that he had Aevery scrap of paper that they
have,@ so he
was Afully aware
of everything they have,@ which would have included the
fact that James Lyon, not a confidential informent, told the sheriff=s
department that Slaughter was his dealer. 

Moreover, the record does not
support Slaughter=s argument that his trial
counsel was not prepared for trial. 
Although the record includes a discussion of Slaughter=s trial
counsel=s motion
for continuance, it is obvious from the record that the motion for continuance
was filed to delay this case until after Slaughter had been sentenced in the
federal case; Slaughter=s trial counsel indicated that a
conviction in the present case might affect Slaughter negatively in the federal
case.  Later, Slaughter=s trial
counsel said that he would state that he was Aready@ but
that he was not waiving this argument. 
The record demonstrates that Slaughter=s trial
counsel=s strategy
was to Atest
[sic] the evidence@ during the pretrial motion to
suppress hearing and then proceed with a guilty plea if the suppression hearing
had an unfavorable result.  Therefore, it
does not appear that Slaughter=s trial
counsel was unprepared for trial.








With regard to Slaughter=s
arguments that his trial counsel failed to identify other individuals and
subpoena witnesses who would testify on Slaughter=s
behalf, he fails to articulate who such witnesses are and what they would have
testified to that would have helped his case. 
Furthermore, as discussed above, Slaughter failed to meet his burden to
prove that he was not properly admonished, see Dusenberry, 915 S.W.2d at
949, and so we cannot say that his trial counsel erred by failing to object to
the jury charge.

Consequently, the trial record before
us is insufficient to establish Slaughter=s
ineffective assistance of counsel claim. 
See Salinas, 163 S.W.3d at 740. 
Accordingly, we hold that Slaughter failed to overcome the strong
presumption that his trial counsel rendered adequate assistance.  See Strickland, 466 U.S. at 690, 104
S. Ct. at 2066.  We overrule Slaughter=s
seventh issue.

V.  Conclusion

Having overruled Slaughter=s seven
issues, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

 

PANEL F: WALKER, GARDNER,
and MCCOY, JJ.

                                                    

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 








DELIVERED: October 25,
2007











[1]See Tex. R. App. P. 47.4.





[2]Gardner pleaded guilty
before the jury after the prosecution read counts I through IV of the
indictment.  Id. at 394.  Without any objection from Gardner, the trial
court accepted his guilty plea after ascertaining that Gardner was pleading
guilty for no other reason than that he was guilty and not because of any
promise made on behalf of the State.  Id.  Thereafter, the State proceeded to give its
opening statement in the punishment phase. 
Id. at 394-95.





[3]Slaughter=s counsel stated during
opening statements at the punishment phase:

 

When the judge came out
and said Jesse pled guilty and we=re going to proceed straight to sentencing, I don=t want you to think your
job is any less important, because it=s not.  We
always felt there would be a very good chance I would be talking to you about
the issue of punishment.  This is what
you were picked for.

 

. . . .

 

Well, yesterday [during
voir dire] when I was talking to you, I fully believed they were going to have
a problem proving their case, a problem with the evidence.

 

The way it works is,
while you were outside this morning, we=re having a hearing, I=m testing the evidence
and believe it or not, I was wrong.  It
happens.  They weren=t going to have any
problem proving this case.  There=s no reason to waste your
time.  Get right to the heart of it.  That=s why things changed, circumstances changed.

 





[4]One way that this case
differs from Gardner is that the record here reflects that Slaughter had
previously pleaded guilty in the federal case pending against him, which
indicates that Slaughter was familiar with the rights that he would be waiving
by pleading guilty.  Thus, the evidence
in this case showing that Slaughter understood the rights that he was waiving
by pleading guilty is even greater than that in Gardner. 





[5]The court=s charge, however, stated
that Slaughter had persisted in his plea of guilty Anotwithstanding that the
Court, as required by law, has admonished him of the consequences.@  Case law exists holding that such recitations
found in the judgment or in other portions of the record, including the charge
to the jury, are binding on an appellant in the absence of direct proof to the
contrary and that a defendant=s arguments alone are insufficient to rebut such
recitations in the charge.  See Haines
v. State, 623 S.W.2d 367, 373 (Tex. Crim. App. 1981); Singleton v. State,
986 S.W.2d 645, 651 (Tex. App.CEl Paso 1998, pet. ref=d); Dusenberry v.
State, 915 S.W.2d 947, 949 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d); Childress v. State,
845 S.W.2d 377, 379-80 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d); see also McHenry
v. State, Nos. 01-00-01005-CR, 01-00-01009-CR, 2001 WL 1632137, at *2-3
(Tex. App.CHouston [1st Dist.] Dec.
20, 2001, pet. ref=d) (not designated for
publication) (holding that appellant was admonished because the jury charge
stated that appellant was admonished even though no admonishments were given on
the record).  Nonetheless, no harm exists
in this case for the reasons that follow.