COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-050-CR

JESSE SLAUGHTER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH JUDICIAL DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Jesse Slaughter raises seven issues challenging his conviction for possession of more than four grams but less than two hundred grams of methamphetamine.  In issues one through six, Slaughter challenges the voluntariness of his guilty plea, contending that the trial court erred by failing to apprise him of the constitutional rights waived by his guilty plea and by failing to provide him with certain statutorily required admonishments.  In issue seven, Slaughter contends that his trial counsel was ineffective.  We will affirm.

II.  Factual Background

Denton County Sheriff Officer Shane Norie initially arrested Slaughter for possessing methamphetamine on November 16, 2005, and a grand jury subsequently indicted him for possession of more than four grams but less than two hundred grams of methamphetamine.  Slaughter then failed to appear for his arraignment, and the trial court issued a warrant for his arrest. 

Eventually, voir dire commenced in the trial on the Denton County charges, and a jury was empaneled.  While the jury waited in the jury room, the trial court conducted a hearing on Slaughter’s motion to suppress.  Slaughter moved to suppress the evidence collected from a backpack that he had carried into a hotel room, alleging that the officers lacked probable cause to search the backpack.  After the suppression hearing, the trial court denied the motion. 

Immediately after the trial court stated on the record that it was denying Slaughter’s motion to suppress, Slaughter’s counsel asked to approach the bench, and an off-the-record discussion occurred.  Afterward, the trial court read Slaughter the charges against him, and Slaughter then entered a plea of guilty to the offense of possession of a controlled substance.  He later pleaded guilty in open court before the jury.  

The record does not expressly show that the trial court provided Slaughter with any warnings or admonishments at the time Slaughter pleaded guilty.  Instead, after Slaughter entered his plea before the jury, the trial proceeded straight to opening statements in the punishment phase.  Trial counsel told the court that he had no objection to the proposed written jury charge, and when the trial court orally charged the jury, trial counsel likewise offered no objection to the following language:

[Slaughter] has persisted in entering his plea of guilty, notwithstanding that the Court, as required by law, has admonished him of the consequences.  It plainly appearing to the Court that the defendant is mentally competent, and that he is not influenced to make said plea by any consideration of fear, persuasion, or any delusive hope of pardon prompting him to confess his guilt, his plea is by the Court received. 

At the conclusion of the punishment phase, the jury assessed Slaughter’s punishment at twenty-three years in prison, and the trial court sentenced him accordingly.  This appeal followed. 

III.  
Waiver of Rights With Guilty Plea

In his first five issues, Slaughter contends that the trial court erred by failing to inform him of the waiver of his constitutional rights as required by the mandates of 
Boykin v. Alabama
, 395 U.S. 238,
 
89 S. Ct. 1709
 
(1969).  In his sixth issue, Slaughter contends that the trial court erred by failing to admonish him as required by the Texas Code of Criminal Procedure.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 26.13 (Vernon Supp. 2006).  Whether a trial court has complied with article 26.13 and whether it has complied with 
Boykin 
are two separate questions. 
 Gardner v. State
, 164 S.W.3d 393, 398 (Tex. Crim. App. 2005) (citing 
Aguirre-Mata v. State
, 125 S.W.3d 473, 474-77 (Tex. Crim. App. 2003)).  Accordingly, we will address these two questions separately.

A. Constitutional Due Process

Slaughter contends that the trial court violated his constitutional right to due process by failing to warn him that his right to a trial by jury, right to confront his accusers, and right against self-incrimination would all be waived by his plea of guilty.  Slaughter asserts that the trial court’s failure to warn him prevented it from determining on the record whether his guilty plea was intelligently and voluntarily given.

1. 
Boykin 
Requirements

In 
Boykin
, the Supreme Court
 
mentioned three constitutional rights that a guilty plea waives:  the privilege against compelled self-incrimination, the right to a jury trial, and the right to confront one’s accusers.  
Boykin
, 395 U.S. at 243, 89 S. Ct. at 1712; 
Gardner
, 164 S.W.3d at 399. 
 
A violation of these due process rights occurs when a trial court accepts a plea of guilty without an affirmative showing “spread on the record” that the guilty plea was “intelligent and voluntary.” 
 Aguirre-Mata
, 125 S.W.3d at 474 (quoting  
Boykin
, 395 U.S. at 242,
 
89 S. Ct. at 1711-12).  
Boykin
 did not specifically set out what due process requires to be “spread on the record” except to say generally that state courts should make sure that a guilty-pleading defendant “has a full understanding of what the plea connotes and of its consequence.”  
Id. 
at 475 (quoting 
Boykin
, 395 U.S. at 244, 89 S. Ct. at 1712).  The trial court commits reversible error if the record does not reflect that a defendant fully understands the plea’s connotations and its consequences.  
Boykin
, 395 U.S. at 244, 89 S. Ct. at 1712.

The Supreme Court has set the standard for the voluntariness of guilty pleas as follows:

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor’s business (e.g., bribes).

Brady v. United States
, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970) (citing 
Shelton v. United States
, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), 
rev’d on confession of error on other grounds
, 356 U.S. 26 (1958)). 

The voluntariness of a plea can be determined only by considering all of the relevant circumstances surrounding it.  
Brady
, 397 U.S. at 749, 90 S. Ct. at 1469.
  As such, voluntariness may be inferred from the record based on statements made by a defendant’s counsel.  
Gardner
, 164 S.W.3d at 399 (holding guilty plea to be voluntary where defendant’s counsel made statements during punishment phase mentioning that defendant would testify despite his Fifth Amendment protections, that guilty plea was saving jury from the “grueling experience” of determining defendant’s guilt, and that child victim would not have to testify).  Voluntariness may also be inferred when a guilty plea is shown to be part of the defendant’s trial strategy.  
Id.
 (finding guilty plea to be part of a strategy to persuade the jury to be lenient); 
see also Boykin
, 395 U.S. at 240, 89 S. Ct. at 1709 (recognizing that trial strategy may make guilty plea the desired course of action).  A trial court does not commit per se reversible error by failing to specifically inform the defendant of each right he is waiving by pleading guilty.  
See Gardner
, 164 S.W.3d at 394-95, 399-400 (upholding guilty plea despite trial court’s failure to explicitly warn defendant).  Instead, in determining whether a plea is voluntary, the focus is upon whether the record shows that the defendant understood that he was waiving the rights when he pleaded guilty.  
Id
.

2. The 
Gardner
 Case

In 
Gardner
, the appellant claimed on direct appeal that his guilty “plea was involuntary and a violation of his federal due process rights because the [trial] court failed to admonish him of his various constitutional rights and determine that his plea was intelligently and voluntarily made.”
  Id.
 at 397.  Because his case involved a complete absence of admonishments,
(footnote: 2) the appellant in 
Gardner
 argued that his guilty plea was invalid under 
Boykin
 and contended that the record did not affirmatively show that he understood the nature of the constitutional due process protections that he was waiving when he pleaded guilty.  
Id.
 at 397-98.  The Texas Court of Criminal Appeals held that the record in 
Gardner
 adequately showed that the appellant understood that he was waiving his rights—the privilege against compelled self-incrimination, the right to a jury trial, and the right to confront his accusers—when he pleaded guilty.  
Id.
 at 399.  In reaching its holding, the Texas Court of Criminal Appeals said that the appellant’s understanding that he was waiving his rights

[m]ay be inferred, in part, from appellant’s counsel’s statements during the punishment phase mentioning that appellant would testify even though he did not have to under the Fifth Amendment and that appellant’s guilty plea saved the victim from having to testify and saved the jury from the “grueling experience” of determining appellant’s guilt. . . .

The voluntary nature of appellant’s guilty plea is further shown in the record by the overwhelming evidence that appellant’s guilty plea was part of a strategy (which we may also infer was done in consultation with competent counsel) to persuade the jury to grant appellant probation.

Id.
  Thus, the Texas Court of Criminal Appeals in 
Gardner
 looked at the punishment phase in determining whether the appellant understood the nature of the rights he was waiving by pleading guilty in the guilt-innocence phase.

3. Slaughter’s Guilty Plea

In this case, as mentioned above, Slaughter pleaded guilty before the judge and then again in open court before the jury.  The trial court did not question Slaughter on the record regarding his decision to plead guilty.  Nonetheless, the record demonstrates that Slaughter’s plea of guilty was made knowingly and voluntarily.

The record contains no inference of threats, misrepresentation, or improper promises, nor does Slaughter contend that such improprieties occurred.  
See Brady
, 397 U.S. at 755, 90 S. Ct. at 1472.  The sequencing of Slaughter’s guilty plea—after a venire panel had been voir dired on guilt-innocence and a jury had been empaneled—indicates Slaughter’s understanding that he was waiving his right to have the empaneled jury try him on guilt-innocence and was waiving his right to confront his accusers, i.e., to have the State put on its evidence against him. Additionally, statements made by Slaughter’s counsel provide an inference that Slaughter understood that he was waiving these rights when he pleaded guilty.
(footnote: 3)  
See Gardner
, 164 S.W.3d at 399 (using appellant’s trial counsel’s statements during punishment to demonstrate that appellant understood he was waiving rights when he pleaded guilty during guilt-innocence phase).  Finally, the record reflects that Slaughter’s trial counsel’s strategy all along was to enter a plea of guilty if his motion to suppress was denied.  
See id.

Slaughter did not testify at guilt-innocence, so his waiver of his right to remain silent at guilt-innocence was not called into play.  Although a criminal defendant retains the Fifth Amendment right to remain silent and avoid compelled self-incrimination at his sentencing hearing, even after a plea of guilty, 
see Mitchell v. United States
, 526 U.S. 314, 326-27, 119 S. Ct. 1307, 1314 (1999), Slaughter specifically waived that right on the record.  Slaughter’s counsel also noted that, “You’re going to meet Jesse, get a chance to hear him speak to you.”  Slaughter’s counsel told the jury that Slaughter would be explaining his life story to the jury.  And finally, outside the jury’s presence before Slaughter testified at the punishment phase, the trial court asked him several times whether he understood that he was not required to testify:

THE COURT:  All right.  Mr. Slaughter, before I allow you to testify, I need to make sure that you understand that you are not required to testify here against yourself.  You understand that?

THE DEFENDANT:  Yes, sir. [sic]

THE COURT:  You understand that the State can’t call you as a witness?

THE DEFENDANT:  Yes, ma’am.

THE COURT: And you understand that I can’t let your attorney call you as a witness unless you tell me that you understand your right to remain silent and that you wish to waive it.  Do you understand that?

THE DEFENDANT:  Yes, sir. [sic]

THE COURT:  All right.  Now, obviously there’s a court reporter here taking down your testimony and your responses to any questions.  You’ll be subject to cross-examination.  Knowing that, do you still wish to testify?

THE DEFENDANT:  Yes, I do.

THE COURT:  All right. 

Despite these warnings, Slaughter testified without objection during the punishment phase.  Thus, the record reflects that Slaughter understood that he was waiving his Fifth Amendment right against self-incrimination during the punishment phase. 

After reviewing the record, which closely tracks 
Gardner,
 we hold that there was an affirmative showing “spread on the record” that Slaughter had a full understanding of the consequences of his guilty plea.
(footnote: 4)  
See Boykin
, 395 U.S. at 244; 
See Aguirre-Mata
, 125 S.W.3d at 475.  Thus, the trial court did not commit reversible error by failing to expressly warn Slaughter of these waivers.  
Boykin
, 395 U.S. at 244.  Accordingly, we overrule Slaughter’s first five issues. 

B. Article 26.13 Admonishments

In his sixth issue, Slaughter asserts that the trial court’s failure to provide him with the admonishments required by article 26.13 of the Texas Code of Criminal Procedure requires that his conviction be reversed.  Article 26.13 requires the trial court to admonish the defendant of the following:  (1) the range of punishment, (2) the effects of a plea bargain agreement, (3) possible deportation upon conviction on a noncitizen, and (4) requirements for registration as a sex offender.  
Tex. Code Crim. Proc. Ann.
 art. 26.13 (Vernon Supp. 2006).
  
Neither party disputes the trial court’s failure to admonish Slaughter in open court in accordance with article 26.13.
(footnote: 5)  This type of error is nonconstitutional and is subject to a harm analysis under Rule 44.2(b). 
Aguirre-Mata
, 125 S.W.3d at 474.

1. Harmless Error Standard

With nonconstitutional error, we apply rule 44.2(b) and disregard the error if it did not affect Slaughter’s substantial rights.  
See
 
Tex. R. App. P.
 44.2(b); 
Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).  
A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
  Accordingly, in applying rule 44.2(b) to the failure to give an admonition we must determine, by considering the record as a whole, whether we have a fair assurance that the defendant’s decision to plead guilty would not have changed had the court admonished him. 
 Anderson v. State
, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006).

2. Applicability of Article 26.13

A trial court need not inform the defendant of each admonishment if the admonishment is inapplicable to the case.  
See id.
 at 916 (noting that admonishment regarding plea bargain was unnecessary when a jury was empaneled to assess the punishment).
  A failure to admonish regarding the range of punishment is harmless when the defendant has full knowledge of the applicable punishment range based on voir dire examination. 
 Gamble v. State
, 199 S.W.3d 619, 622 (Tex. App.—Waco 2006, no pet.);
 see also Aguirre-Mata
, 125 S.W.3d at 476-77 (“
The record contains references to the correct punishment range and there is nothing in the record that shows appellant was unaware of the consequences of his plea . . . .”).

Several of the admonishments contained in article 26.13 are inapplicable to Slaughter’s case.  First, a jury assessed Slaughter’s punishment, and therefore no plea bargain existed.  Thus, no harm resulted from a failure to admonish about plea agreements.  
See Anderson,
 
182 S.W.3d at 916
.  Second, the record reflects that Slaughter was born in Texas, thereby making him a United States citizen.  Accordingly, no harm resulted from a failure to admonish about deportation. 
 
Third, Slaughter’s offense of possession of a controlled substance is not an offense which requires registration as a sex offender.  
See 
Tex. Code Crim. Proc. Ann.
 art. 62.001(5) (Vernon 2006).  Thus, no harm resulted from the trial court’s failure to admonish him regarding sex offender registration. 

Finally, both the State and Slaughter discussed the range of punishment during voir dire.  The State mentioned that the range of punishment for this particular offense, a second-degree felony, was two to twenty years in prison with a potential fine of up to $10,000.  The State also explained that a prior felony conviction can enhance a second-degree felony to the level of a first-degree felony, thereby making the punishment five years to life.  Several questions about the potential punishment followed.  When Slaughter later examined the potential jurors, he specifically focused on the range of punishment by asking jurors if they could send a man to prison for five years to life.  Based on both the State’s and Slaughter’s voir dire examinations, Slaughter should have known of the potential range of punishment.  Thus, Slaughter was not harmed by the trial court’s failure to admonish him about the range of punishment at the time he pleaded guilty.  
See
 
Gamble
, 199 S.W.3d at 622;
 see also Aguirre-Mata
, 125 S.W.3d at 476-77. 

As demonstrated above, most of the admonishments set forth in article 26.13 do not apply to the facts of this case; the one requirement that does—admonishment about the range of punishment—was discussed in voir dire by both the State and Slaughter.  For these reasons, we have a fair assurance that Slaughter’s decision to plead guilty would not have changed, and he does not argue that it would have changed, had the trial court admonished him.  
See Anderson
, 182 S.W.3d at 919.  As such, we hold that
, in the context of the entire case against Slaughter, the trial court’s error in failing to admonish Slaughter did not have a substantial or injurious effect on the jury’s verdict and did not affect Slaughter’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
See
 
Tex. R. App. P.
 44.2(b).
  We overrule Slaughter’s sixth issue.

IV.  
Ineffective Assistance of Counsel

In his seventh issue, Slaughter argues that he was denied his fundamental right to effective assistance of counsel due to his trial counsel’s cumulative errors.  Specifically, Slaughter contends that his trial counsel (1) failed to object to the statement in the jury charge that Slaughter had been admonished, (2) failed to file a motion to suppress articulating the current case law regarding the suppression issue and failed to file a motion to compel disclosure of confidential informants, (3) failed to conduct effective pretrial investigation, (4) failed to prepare for trial, (5) failed to properly investigate the case by not determining the background of the other individuals who were in contact with law enforcement, and (6) failed to subpoena any witnesses to testify on Slaughter’s behalf.  Of these alleged errors, Slaughter argues that one stands out above the rest:  trial counsel’s failure to object to the jury charge regarding the admonishment and move for a mistrial.  

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his
 counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Id.
  (quoting 
Thompson
, 9 S.W.3d at 813).

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, an appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Our review of the record reveals that Slaughter received a pretrial hearing on his motion to suppress.  Slaughter’s arguments that his trial counsel failed to obtain the names of confidential informants and subpoena them are without merit.  The record demonstrates that, unlike the federal case pending against Slaughter, the drug charges that Slaughter was on trial for in Denton County did not involve the use of a confidential informant. 
 
During voir dire, Slaughter’s trial counsel stated outside the jury’s presence that the State had turned over all discovery to him and that he believed that he had “every scrap of paper that they have,” so he was “fully aware of everything they have,” which would have included the fact that James Lyon, not a confidential informent, told the sheriff’s department that Slaughter was his dealer. 

Moreover, the record does not support Slaughter’s argument that his trial counsel was not prepared for trial.  Although the record includes a discussion of Slaughter’s trial counsel’s motion for continuance, it is obvious from the record that the motion for continuance was filed to delay this case until after Slaughter had been sentenced in the federal case; Slaughter’s trial counsel indicated that a conviction in the present case might affect Slaughter negatively in the federal case.  Later, Slaughter’s trial counsel said that he would state that he was “ready” but that he was not waiving this argument.  The record demonstrates that Slaughter’s trial counsel’s strategy was to “test [sic] the evidence” during the pretrial motion to suppress hearing and then proceed with a guilty plea if the suppression hearing had an unfavorable result.  
Therefore, it does not appear that Slaughter’s trial counsel was unprepared for trial.

With regard to Slaughter’s arguments that his trial counsel failed to identify other individuals and subpoena witnesses who would testify on Slaughter’s behalf, he fails to articulate who such witnesses are and what they would have testified to that would have helped his case.  Furthermore, as discussed above, Slaughter failed to meet his burden to prove that he was 
not properly admonished, 
see Dusenberry
, 915 S.W.2d at 949, and so we cannot say that his trial counsel erred by failing to object to the jury charge.

Consequently, the trial record before us is insufficient to establish Slaughter’s ineffective assistance of counsel claim.  
See Salinas
, 163 S.W.3d at 740.
  Accordingly, we hold that Slaughter failed to overcome the strong presumption that his trial counsel rendered adequate assistance.  
See Strickland
, 466 U.S. at 690, 104 S. Ct. at 2066.
  
We overrule Slaughter’s seventh issue.

V.  Conclusion

Having overruled Slaughter’s seven issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: October 25, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Gardner pleaded guilty before the jury after the prosecution read counts I through IV of the indictment.  
Id.
 at 394.  Without any objection from Gardner, the trial court accepted his guilty plea after ascertaining that Gardner was pleading guilty for no other reason than that he was guilty and not because of any promise made on behalf of the State.  
Id.
  Thereafter, the State proceeded to give its opening statement in the punishment phase.  
Id.
 at 394-95.

3:
Slaughter’s counsel stated during opening statements at the punishment phase:

When the judge came out and said Jesse pled guilty and we’re going to proceed straight to sentencing, I don’t want you to think your job is any less important, because it’s not.  We always felt there would be a very good chance I would be talking to you about the issue of punishment.  This is what you were picked for.

. . . .

Well, yesterday [during voir dire] when I was talking to you, I fully believed they were going to have a problem proving their case, a problem with the evidence.

The way it works is, while you were outside this morning, we’re having a hearing, I’m testing the evidence and believe it or not, I was wrong.  It happens.  They weren’t going to have any problem proving this case.  There’s no reason to waste your time.  Get right to the heart of it.  That’s why things changed, circumstances changed.

4:
One way that this case differs from 
Gardner
 is that the record here reflects that Slaughter had previously pleaded guilty in the federal case pending against him, which indicates that Slaughter was familiar with the rights that he would be waiving by pleading guilty.  Thus, the evidence in this case showing that Slaughter understood the rights that he was waiving by pleading guilty is even greater than that in 
Gardner
. 

5:
The court’s charge, however, stated that Slaughter had persisted in his plea of guilty “notwithstanding that the Court, as required by law, has admonished him of the consequences.”  Case law exists holding that such recitations found in the judgment or in other portions of the record, including the charge to the jury, are binding on an appellant in the absence of direct proof to the contrary and that a defendant’s arguments alone are insufficient to rebut such recitations in the charge.  
See Haines v. State
, 623 S.W.2d 367, 373 (Tex. Crim. App. 1981); 
Singleton v. State
, 986 S.W.2d 645, 651 (Tex. App.—El Paso 1998, pet. ref’d); 
Dusenberry v. State
, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d); 
Childress v. State
, 845 S.W.2d 377, 379-80 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d); 
see also McHenry v. State
, Nos. 01-00-01005-CR, 01-00-01009-CR, 2001 WL 1632137, at *2-3 (Tex. App.—Houston [1st Dist.] Dec. 20, 2001, pet. ref’d) (not designated for publication) (holding that appellant was admonished because the jury charge stated that appellant was admonished even though no admonishments were given on the record).  Nonetheless, no harm exists in this case for the reasons that follow.