NUMBER 13-08-00511-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


ELISEO BARNHART, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 




On appeal from the 105th District Court of 


Kleberg County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Benavides, and Vela

Memorandum Opinion by Justice Yañez

 Appellant, Eliseo Barnhart, was convicted of two counts of aggravated perjury. (1) 
Appellant was sentenced to two years' confinement for each count to run concurrently;
however, his sentence was suspended and appellant was placed on community
supervision for a period of five years. By sixteen issues, appellant contends that: (1) the
evidence was legally and factually insufficient to support his convictions (issues 1-10 and
13-16); (2) "[t]he trial court erred in instructing the jury that proof of the falsity of any
statement was sufficient" (issue 11); and (3) "[t]he trial court erred in denying appellant's
request that the names of the grand jurors be disclosed to appellant" (issue 12). We affirm
in part and reverse in part and remand.

I. Background

 Andrea Espinosa was in a training program with a justice of the peace in Willacy
County. Appellant, another justice of the peace, worked in the same office where Espinosa
was being trained. After temporarily working with appellant, Espinosa reported to police
that appellant had, among other things, engaged in unwelcome touching of her breasts. 
A grand jury was impaneled to determine whether charges would be brought against
appellant. Appellant testified at the grand jury proceeding and allegedly denied Espinosa's
allegations. The grand jury did not indict appellant. Espinosa also filed a civil lawsuit
against appellant. Appellant testified at a deposition for that case. (2)

 After appellant made a statement to the Texas Rangers allegedly admitting that he
had committed some of the acts alleged by Espinosa, the State charged appellant with two
counts of aggravated perjury. (3) Count one alleged that appellant made a false statement
when he testified before the grand jury regarding Espinosa's sexual assault allegations that
he did not touch Espinosa's breasts, he did not become sexually aroused or excited during
the encounter, and he did not kiss Espinosa. Count two alleged that appellant made a
false statement at his deposition by stating that he did not touch Espinosa's breasts, he did
not become sexually aroused or excited during the encounter, and he did not kiss
Espinosa. A trial was held where the State presented testimony from, among others,
Espinosa, Ubaldo Mungia, Fred Gilbert, Alomar Moreno, Rolando Castaneda, Juan
Guerra, Elizabeth Torres, and Javier Villalobos.

 Espinosa testified that she was working at the "JP's office" for "Judge Solis" in 2006. 
Espinosa stated that on February 3, 2006, appellant was training her to perform a work-related task. At 5:00 p.m., Espinosa left, picked up her children, and went to purchase a
pie for a birthday party she was attending that evening. Espinosa realized that she did not
have her purse. After searching various places for her purse, Espinosa eventually
contacted appellant and asked him to unlock the door of the building so that she could get
her purse. Espinosa testified that "around 6:00 or 6:30," she met appellant at the building
and he unlocked the back door for her. Espinosa entered the building and proceeded to
appellant's office, which was locked. Espinosa asked appellant to unlock his office door,
and he did so. Espinosa testified that when she got her purse, appellant "reached with his
hand and he grabbed . . . [her] breast area." According to Espinosa, appellant then "put
his hand under [her] shirt and under [her] bra." Espinosa stated that she pushed appellant
away and told him she was "not like that" and that appellant repeatedly told her, "I know
how you are."

 According to Espinosa, she attempted to leave through the back door; however,
unbeknownst to her, appellant had already locked it. Espinosa stated that she went to a
hallway and appellant "pinned [her] back against the hallway" and touched her breasts,
"groin area," and "buttocks." Espinosa testified that appellant stated, "I have my penis real
hard" and that he "rubbed himself against" her. According to Espinosa, appellant undid
his zipper and "pulled out his penis." Espinosa stated that when appellant attempted to
kiss her, she moved and he kissed her neck. Espinosa testified that she lied to appellant, 
stating that CPS would remove her children because she left them home alone and that
once she picked up her children, she would come back. Espinosa then left and did not
return.

 Mungia testified that he was a member of the grand jury in appellant's case
considering Espinosa's sexual assault allegations. Mungia recalled that Espinosa stated
that appellant exposed his penis to her; however, Mungia could not recall whether
Espinosa said appellant touched her inappropriately. The State reminded Mungia that he
had testified before the grand jury in appellant's perjury case and had stated that
"[Espinosa's] main complaint was that he had, I guess, grabbed her or touched her
inappropriately." The State told Mungia, that the district attorney then asked, "Touched her
breasts . . . .  Do you recall that?", and Mungia replied, "Yes." When asked if that
refreshed his memory, Mungia responded, "Yeah, I guess. If I said it then, I guess."

 Mungia stated that appellant voluntarily testified before the grand jury and informed
the grand jurors that his attorney had advised him not to testify. Mungia testified that
appellant did not deny the allegations because appellant did not mention them. However,
on re-direct examination, the following colloquy occurred:

 [The State]: As far as you recollect, you-all knew what the accusations
were by Ms. Espinosa?


 [Mungia]: Well, yes, that's what I told him.


 [The State]: And he [appellant] knew what the accusations were, and he
was questioned by the Grand Jury as to his accusations, is that
correct?


 [Mungia]: There were questions asked regarding that.


 [The State]: And, basically, the gist of his testimony, was he denied
anything inappropriate?


 [Mungia]: Right.


 [The State]: Denied touching her, denied exposing himself, all of that, isn't
that correct?


 [Mungia]: Right.


 [The State]: And the statement that he gave later contradicts his testimony
before you, isn't that fair to say?


 [Mungia]: The statements that came out later, yes.


 [The State]: If he admitted to kissing her and touching her breasts and
telling her, hey, you got me excited, that contradicts his
testimony before you-all, isn't that correct?


 [Mungia]: Yes.


 Gilbert testified that he was a member of the same grand jury and that he
remembered that Espinosa made allegations of sexual harassment or sexual misconduct. 
Gilbert did not recall the specifics, and when asked by the State if he recalled whether
there were allegations that appellant touched Espinosa's breasts or exposed his penis to
her, Gilbert stated he did not recall. However, Gilbert testified that he remembered that
there was an allegation of some touching, but he did not recall the details. Gilbert testified
that appellant said, "he didn't do it," and Gilbert believed appellant was denying Espinosa's
allegations.

 Moreno testified that she was a member of the same grand jury that investigated
Espinosa's allegations against appellant. Moreno stated that Espinosa testified that
appellant touched her breasts and showed her his penis when she went to retrieve her
purse at the office. Moreno testified that appellant denied touching Espinosa's breasts,
kissing her, and exposing himself to her. However, Moreno could not recall whether
appellant testified that he was not sexually aroused. When asked if it was possible that an
indictment stemming from Espinosa's sexual assault allegations could have been issued
if appellant had testified that he "wanted to kiss her and our lips touched for a second; I
touched both of her breasts and I didn't take out my penis, but I did tell her, 'mira como me
dejastes', meaning she had turned me on", Moreno replied, "Probably would." On cross-examination, Moreno stated that she was "pretty sure" that appellant was sworn in before
testifying before the grand jury.

 Guerra, the district attorney for Willacy County at the time of appellant's trial,
testified that the reason the grand jury met on May 18, 2006, was to investigate whether
charges of indecency and sexual assault would be brought against appellant and to
investigate whether someone attempted to extort money from appellant. (4) Guerra stated
that appellant had not been summoned to appear before the grand jury and that he did not
believe that appellant would testify. Guerra explained that prior to the grand jury meeting,
appellant had asked him if he could testify, so Guerra contacted appellant's attorney, who
told Guerra that appellant would not testify.

 Guerra recalled that at that grand jury proceeding, Espinosa stated that appellant
"grabbed" her, "penned [sic]" her against the wall, attempted to grab her breast, "took out"
his penis, and tried to kiss her. When the grand jury "finished" and the court reporter had
left, Guerra found appellant sitting outside. Appellant told Guerra that he wanted to testify
before the grand jury; Guerra informed appellant that his attorney had stated he should not
testify and advised appellant to follow his lawyer's advice. Guerra stated that appellant
"insisted" on testifying; so, after Guerra "warned" appellant that he would be testifying
under oath, appellant testified before the grand jury without a court reporter present. 
According to Guerra, appellant made his statements to the grand jury under oath. (5)

 Guerra testified that the grand jurors asked "specific questions, which [appellant]
kept denying everything, saying, 'Nothing happened. Nothing inappropriate happened.'" 
Guerra recalled the following:

 I remember one of them [the grand jurors], specifically, it was a female
Grand Juror, was very, very specific about asking him, "Did you grab her
breasts and did you try to kiss her," and he said, "No. Nothing inappropriate
happened." He kept saying that, "I just went there, opened the door, stood
there. She went and got her purse, came back and I locked it." And he said,
"No more than maybe three, four minutes. That's what it took. I'm not sure
why she's doing this to me."


Guerra stated that one of the grand jurors asked if appellant had "taken out his penis" and
that appellant said, "No. I didn't do that. And I didn't touch her and I didn't do anything. 
I'm not sure why she's doing--why she's saying what she's saying." Guerra testified that
one of the grand jurors asked if appellant was sexually aroused. Although Guerra did not
state how appellant responded to the question, Guerra said that appellant denied
everything and insisted that nothing inappropriate happened.

 Guerra testified that the questions that the grand jurors asked were material and that
those questions were "pertinent" because "[they] were looking at the sexual assault and
the definition of sexual assault versus indecency, whether or not he actually penetrated
her . . . ." Guerra believed that if appellant had admitted any of the allegations made by
Espinosa, appellant would have been indicted. Guerra concluded, therefore, that
appellant's alleged false statements to the grand jury affected the outcome of the grand
jury proceeding.

 Guerra stated that he became aware of the statement appellant made to the Texas
Rangers--a statement Guerra described as "totally the opposite of what [appellant] had
said [at the grand jury proceeding]." Guerra testified that the statement appellant made
to the Texas Rangers was consistent with Espinosa's testimony. Guerra stated that he
believed that appellant committed aggravated perjury when he testified before the grand
jury. (6)

 Torres, a court reporter, testified that she was the court reporter for deposition
testimony given by appellant on August 21, 2006 in Espinosa's civil case against appellant. 
Torres stated that Espinosa's civil case was brought in the 197th Judicial District of Willacy
County, Texas. On cross-examination, Torres acknowledged that defense exhibit number
three was an "errata sheet" purporting to change appellant's answers to several of the
questions asked during the deposition. (7) However, Torres did not explain what answers
appellant tried to correct. (8)

 Villalobos, an attorney, testified that he had represented Espinosa in a civil lawsuit
that Espinosa filed against appellant for numerous causes of action including battery,
assault, false imprisonment, and possible sexual harassment. (9) Villalobos stated that he
deposed appellant for that lawsuit. According to Villalobos, appellant was aware of the
allegations that Espinosa was making against him when he deposed appellant. Villalobos
testified that the "the crux of the matters was whether there had been touching,
inappropriate touching, and whether--we had plead [sic] false imprisonment and those
matters." Villalobos stated that appellant denied any inappropriate behavior and denied
kissing any woman other than his wife. Villalobos testified that the questions he asked
appellant were material to the case because it was important to determine "whether there
was actual touching, inappropriate behavior." The State then asked, "Okay. And his
statement in the deposition where you asked him, 'Did it excite you', referring to the way
that [Espinosa] was dressed and his response 'no', would that in your opinion be a material
statement?" Villalobos replied, "It would have been. What we were trying to do, since he
was denying, we were trying to see--kind of go through the little history of the incident and
part of that was whether--why he would have come back two hours later when he initially
didn't want to be there in the first place. So, pretty much the questioning, other than, of
course, the name and all that type of deal would have been material to the prosecution of
the case."

 On cross-examination, Villalobos stated that appellant's deposition in the civil case
was taken in Hidalgo County, Texas. When asked, "Now, if the indictment alleges that this
statement was given in Willacy, that's not true, is that correct?", Villalobos responded, "The
proceedings were in Willacy, but the actual statement was--I believe it was in Hidalgo." 
Villalobos stated, "That [whether the perjured testimony was in Hidalgo or Willacy
Counties] would depend on how the courts would interpret. The proceedings were in
Willacy, but the statement was over there, so I don't know whether they would construe it
as a proceeding in Willacy or Hidalgo."

 On re-direct examination, Villalobos testified that appellant was fully aware of
Espinosa's allegations when he denied them. Villalobos stated that he believed that, in the
context of the deposition, appellant was denying all of Espinosa's allegations and was
claiming that all he did was open the door for Espinosa, who got her purse, and left.

 The trial court admitted into evidence excerpts of appellant's deposition. In the
excerpts, appellant stated that he "probably" told one member of the media that Espinosa's
allegations were not true and that when another member of the media asked about the
allegations, he denied them and stated that "nothing had happened." When asked how
his family would react if the allegations were proven to be true, appellant stated that the
allegations were not true. Espinosa's civil attorney asked appellant if he liked how
Espinosa "looked." Appellant responded that Espinosa was not a "bad looking lady." 
Espinosa's attorney then asked, "Did it excite you?" and appellant replied, "No." During
the deposition, the following exchange occurred: (10)

 [Espinosa's attorney]: Have you ever had a relationship, sexual in
nature--and what I mean by "sexual in nature,"
I mean the touching, stimulating of either
individual private parts or reproductive organs
either with a hand or the mouth or the
reproductive organ in itself since you've been
married?


 [Appellant]: No, sir.


 [Espinosa's attorney]: Have you ever kissed any other woman
other--any woman other than your wife, an adult
woman since you've been married?


 [Appellant]: No, sir.


 Castaneda, a sergeant with the Texas Rangers, testified that he interviewed
appellant on September 11, 2006. (11) This was the second statement appellant made to the
Texas Rangers--the first statement was made to Ranger Victor Escalon. (12) Appellant's
statement to Ranger Castaneda was read into the record. In this statement, appellant said
that he "would like to add" to the first statement taken by Escalon because he "left out"
some information in order to "talk to his wife" before revealing it. In his second statement,
appellant claimed that while at his office, Espinosa asked him to touch her and admitted
that he "consensually" touched her shoulder and both her breasts over her clothing. In the
statement, appellant explained that he wanted to kiss Espinosa, that their lips touched "for
about a second," and that Espinosa turned her head away. Appellant stated that although
he did not "pull out" his penis, he told Espinosa, "'mira como me dejastes' meaning that
she had turned [him] on."

 The defense presented the following witnesses: Paul Wittworth, Billie Pickard,
Teresa "Terry" Flores, Zachary Gonzalez, Lauro Oscar Gutierrez, Aurora Pedraza, Uvaldo
Zamora, Sylvia Frescas, Gilbert Lozano, and Christina Caldera. Wittworth, Flores,
Gutierrez, Zamora, and Lozano testified that Guerra's reputation was "bad." Pickard,
Pedraza, Frescas, and Caldera testified that appellant had a "good" reputation.

 Zamora, the chief of police for the Raymondville Police Department, testified that
he helped investigate whether Espinosa and her family attempted to extort money from
appellant. According to Zamora, the investigation had been "compromised" because
someone had informed Espinosa that appellant had reported the extortion attempt to the
Texas Rangers. Zamora stated that he planned to conduct an investigation to determine
who had informed Espinosa that appellant contacted the Texas Rangers. However,
according to Zamora, Guerra told him not to conduct the investigation.

 After both sides closed, appellant objected to the trial court's instruction in the jury
charge which stated, "When a person is charged with making more than one false
statement, the proof of the falsity of any one or more of said statements is sufficient to
support a finding of guilty." Specifically, appellant's defense counsel argued the following:

 Again, we're asking that the State elect what means they're going to prove
their case. They've--they've--they indicted my client with allegedly making
three statements. This is their opportunity to say, well, we abandon this and
we're going to prove our case by proving that, you know, he didn't--he lied
about not kissing [Espinosa], he lied about not touching her breasts or he lied
about him not becoming sexually aroused. And so, we object to that
statement because, I mean, the State is required to prove in their case
everything that they allege in their indictment. If they choose to prove three
ways of committing the offense of Perjury, well, then they're required to prove
it three ways. That is the purpose of our asking the Court to make--have
them make an election, Judge, so we object to that paragraph.


The trial court overruled the objection. The jury convicted appellant of two counts of
aggravated perjury. Appellant was sentenced to two years' confinement for each count;
however, that sentence was suspended and appellant was placed on community
supervision for a period of five years. This appeal ensued.

II. Legal and Factual Sufficiency

 By his first through sixth issues, appellant contends that the evidence is legally and
factually insufficient to support the verdict.

A. Standard of Review and Applicable Law

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. (13) We do not reevaluate
the weight and credibility of the evidence, and we do not substitute our own judgment for
the trier of fact. (14) Instead, we consider whether the jury reached a rational decision. (15)

 In a factual sufficiency review, we review the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust or against the great weight and preponderance of the evidence. (16) This Court will not
reverse the jury's verdict unless we can say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the verdict. (17)

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. (18) "A person commits an offense [of
aggravated perjury] if he commits perjury as defined in Section 37.02, and the false
statement: (1) is made during or in connection with an official proceeding; and (2) is
material." (19) Section 37.02 of the penal code states that "[a] person commits an offense if,
with intent to deceive and with knowledge of the statement's meaning: (1) he makes a
false statement under oath . . . ." (20)

B. False Statement

 By his first through sixth issues, appellant contends that the evidence is legally and
factually insufficient to support a finding that, before the grand jury and in his deposition,
he made the following false statements: (1) he was not or did not become sexually
aroused or excited; and (2) he did not touch Espinosa's breasts.

 1. Count 1 (21)

 By his first issue, appellant contends that the evidence is legally insufficient to show
that when he testified before the grand jury, he made a false statement when he stated that
he was not sexually aroused. Appellant does not challenge the legal sufficiency of the
evidence supporting a finding that he made a false statement before the grand jury when
he denied kissing Espinosa or telling her he was sexually aroused. We construe
appellant's issue as challenging the legal sufficiency of the evidence supporting a finding
that appellant made a false statement at the grand jury proceeding.

 Guerra testified that a grand juror asked appellant if he was sexually aroused; and,
although Guerra did not state how appellant replied to that specific question, Guerra
testified that appellant "kept denying everything" and stating that "nothing inappropriate
happened." Furthermore, all three grand jurors testified that appellant denied Espinosa's
allegations. From this evidence, a rational trier of fact could have reasonably inferred that
when appellant was asked by the grand juror if he was sexually aroused, appellant denied
it. (22) However, in his statement to Castaneda, appellant stated that he "consensually"
touched both of Espinosa's breasts, their lips touched "for about a second," and he told
Espinosa, "'mira como me dejastes' meaning that she had turned [him] on." Therefore,
viewing the evidence in the light most favorable to the jury, we conclude that a rational trier
of fact could have found that when appellant testified at the grand jury proceeding, he
made a false statement. (23) We overrule appellant's first issue.

 2. Count Two (24)

 By his third and fourth issues, appellant contends that the evidence is legally
insufficient to support a finding that during his deposition, he made a false statement when
he stated that he did not touch Espinosa's breasts. By his fifth and sixth issues, appellant
contends that "evidence that [he] stated in the deposition that he was not sexually aroused
is legally [and factually] insufficient." Appellant does not challenge the legal sufficiency of
the evidence supporting a conclusion that he made a false statement at his deposition
when said he did not kiss Espinosa. We construe appellant's issue as challenging the
aggravated perjury element of making a false statement.

 Espinosa alleged that appellant grabbed her breasts, kissed her, and stated that his
penis was "hard." Villalobos testified that appellant was aware of Espinosa's allegations
against him. Moreover, the record reveals that appellant was deposed after he testified
before the grand jury, where the grand jurors specifically asked appellant if he touched
Espinosa's breasts, kissed her, or was sexually aroused. (25) At the deposition, appellant
stated that Espinosa's allegations were not true and denied kissing any woman other than
his wife since he had been married. (26) Subsequently, appellant told Ranger Castaneda that
he "touched" lips with Espinosa, touched both her breasts, and he told Espinosa that "she
had turned [him] on." From the evidence presented, the jury could have reasonably
inferred that when appellant stated that the allegations were not true, he was denying that
he grabbed Espinosa's breasts, kissed her, and was sexually aroused. (27) Viewing the
evidence in the light most favorable to the verdict, we conclude that a rational jury could
have reasonably found that at his deposition, appellant made a false statement under
oath. (28) Furthermore, viewing the evidence in a neutral light, we cannot conclude that the
jury's verdict seems clearly wrong and manifestly unjust or is against the great weight and
preponderance of the evidence. (29) We overrule appellant's third, fourth, fifth, and sixth
issues.

C. Material Statement

 By his seventh, eighth, ninth, and tenth issues, appellant contends that the
"evidence that the statement[s] made by appellant in the deposition concerning kissing
[Espinosa and touching her breasts were] material is legally and factually insufficient."
Without citation to authority, appellant argues that if Espinosa's attorney had asked
whether appellant kissed Espinosa, then his statement would have been material to the
proceedings; however, the actual question asked--whether appellant kissed any woman
other than his wife--was not material. (30) Appellant also alleges that he was not asked at
his deposition whether he touched Espinosa's breasts and that the question regarding
whether appellant touched Espinosa's private parts was not material. (31) Appellant has not
provided a clear and concise argument with appropriate citation to authority. Therefore,
we conclude that appellant has waived this issue. (32) We overrule appellant's seventh,
eighth, ninth, and tenth issues.

D. Under Oath

 By his thirteenth issue, appellant contends that "[t]he evidence that [he] was placed
under oath before the grand jury is legally insufficient." We disagree. Guerra testified that
appellant was under oath when he testified before the grand jury. Therefore, viewing the
evidence in the light most favorable to the verdict, we conclude that a rational trier of fact
could have found beyond a reasonable doubt that appellant was under oath when he
testified before the grand jury. (33) We overrule appellant's thirteenth issue.

E. Appearance in Willacy County

 Appellant briefs his fifteenth and sixteenth issues together. By his fifteenth issue,
appellant contends, without citation to authority, that "[t]he evidence that [he] appeared in
Willacy County for his deposition [as alleged in the indictment and the jury charge] is legally
insufficient"; by his sixteenth issue appellant contends that the evidence is factually
insufficient to support such a finding. However, appellant concedes that venue was proper
in Willacy County. Appellant appears to argue that the State failed to prove that the perjury
actually occurred in Willacy County, which he claims is an element of the offense of
aggravated perjury. (34) However, appellant has not provided a clear and concise argument
with appropriate citation to authorities supporting his argument. (35) Therefore, we conclude
that he has waived these issues. (36) We overrule appellant's fifteenth and sixteenth issues.III. Charge Error

 By his eleventh issue, appellant contends that "[t]he trial court erred in instructing
the jury that proof of the falsity of any statement was sufficient." Appellant appears to
argue that the State charged him with three separate criminal acts and that the trial court
was required to instruct the jury that "it [could] not return a guilty verdict unless it
unanimously agree[d] upon the commission of any one of the acts."

 However, appellant has not provided a clear and concise argument with appropriate
citations to authority supporting his contention. (37) Therefore, we overrule appellant's
eleventh issue.

IV. Names of the Grand Jurors

 By his twelfth issue, appellant contends that the trial court erred by denying his
request for the State to disclose the names of the grand jurors who were present when he
allegedly made the false statements. Appellant also complains that the trial court
prohibited him from contacting a grand juror whose identity he knew. (38) Appellant argues
that article 20.02 of the Texas Code of Criminal Procedure does not require that the
identity of the grand jurors be kept secret. In the alternative, appellant argues that he
showed a particularized need to know who the grand jurors were and to speak to them.

A. Relevant Facts

 At a pre-trial hearing, appellant requested several "grand jury transcripts." The State
acknowledged that it had produced several transcripts and stated that it would provide a
grand jury transcript of Espinosa's testimony, if it existed, because it was "related to this
case." Appellant then explained to the trial court that his testimony at the grand jury
proceeding wherein he allegedly committed perjury was not recorded. Appellant argued
that he was therefore at a disadvantage and asked the trial court to order the State to
produce a list of the names of the grand jurors who were not testifying and who were
present when he testified. Appellant also asked for permission to communicate with those
grand jurors. The trial court responded that all grand jurors must take an oath to keep the
proceedings secret, and denied appellant's request. The following exchange between
appellant and the trial court occurred:

 [The Trial Court]: You cannot contact the grand jurors because they
remain under the oath to keep secret what they learned
at a grand jury proceeding.


 [Defense Counsel]: Does that apply to the [S]tate also?


 [The Trial Court]: The [S]tate has dealt with the grand jurors before.


 [Defense Counsel]: Not [this prosecutor].


 [The Trial Court]: The State of Texas has dealt with the grand jurors
before.


 [Defense Counsel]: Wouldn't that be an unfair advantage to the defense?


 [The Trial Court]: That's what the law says.


 [Defense Counsel]: I understand that, but how am I to going to know about
Brady material? Are you going to order the [State] to
interview each juror?


 [The Trial Court]: I'm not going to order the [S]tate which witnesses to
present to the jury that decides the issues here.


 [Defense Counsel]: Well, Judge, if you have twelve potential witnesses,
they're in a room, they've heard the same question,
they've heard the same answer.


 [The Trial Court]: This is what I'm going to do. I will give you the
opportunity to brief the issue.


 . . . .


 [Defense Counsel]: My first inquiry, Judge, was with regards to Brady. But
my question is am I allowed to know at least who the
grand jurors were there so that I can at least exercise
my right to subpoena and have them in court? Now,
whether you allow them to testify or not, that's another
matter. That can be taken care of on appeal, but I
would be denied the right to, are you going to deny me
that right?


 [The Trial Court]: I'm not going to do that today. I may do it later. And
I've invited you to present me authorities and written
argument in a brief that I will look at very carefully.


 [Defense Counsel]: Will you require the [S]tate also, Judge? Because I
mean, this is a matter I'm requesting it, but shouldn't
they have also authority to say yeah, I'm not entitled to
it?


 [The Trial Court]: I'm telling you what you have to do. If you want to
convince me, to persuade me, I'm telling you what you
have to do. Have I made myself clear?


 . . . .


 [Defense Counsel]: Can you clarify the ruling . . . .


 . . . .


 [Defense Counsel]: Because we were, we went into a discussion. My
request was the name of, the names of all the grand
jurors. That's denied.


 [The Trial Court]: Give me authority that supports your request. The next
item.


 [Defense Counsel]: Brady material from these witnesses, which is of
Constitutional magnitude, that it's the obligation to the
[S]tate to provide with regard to those grand jurors. Is
that granted or denied?


 [The Trial Court]: Give me authority with regard to that request. What
else?


 [Defense Counsel]: But for now it's denied?


 [The Trial Court]: I told you I'm not going to make a ruling right now. I'm
giving you the opportunity to persuade me.[ (39)]


 At trial, appellant re-urged his request for the trial court to order the State to disclose
the identities of the other members of the grand jury who were present when appellant
allegedly committed perjury. Appellant argued that under the principles of due process,
he was entitled to know the identity of the members of the grand jury who were present. 
Appellant then informed the trial court that the State had been allowed to interview the
other members of the grand jury and that the State claimed that no "Brady material" was
revealed. However, appellant argued that the State did not disclose what questions it
asked the non-testifying members of the grand jury. Appellant then asked for the same
opportunity that was given to the State. Outside the presence of the jury, appellant
testified that he knew the identity of one of the non-testifying grand jurors, but he did not
know the identity of the others; he then requested to subpoena that grand juror. The State
then argued:

 I don't believe a word this man says, quite frankly, but they haven't shown
that there's anything exculpatory, and while they're entitled to be, you know,
confronted with the witnesses against them, I'm not calling these people
against them [appellant]. I'm calling who I wanna call. You know, I decide
who I wanna subpoena and who I wanna call to the witness stand. They
don't decide for me. There's nothing exculpatory and they have--it's just a
fishing expedition, and they're not entitled to it and they have no authority.


The trial court denied appellant's request.

B. Error

 Appellant argues on appeal that the identities of grand jurors are not required to be
kept secret as the trial court ruled in this case. The State, on the other hand, appears to
argue that because the identities of the grand jurors are part of the "proceedings" of a
grand jury, the identities must be kept secret under article 20.02 of the code of criminal
procedure and that there is no authority requiring the State to disclose the requested
information without a court order. Therefore, the State concludes that even if appellant
showed a particularized need, as required under 20.02, for disclosure of the grand jurors'
identities, it was within the trial court's discretion to deny appellant's request for the grand
jurors' identities.

 Under article 20.02, "[t]he proceedings of the grand jury shall be secret." (40) Black's
Law Dictionary defines the term "proceedings" as "[t]he regular and orderly progression of
a lawsuit, including all acts and events between the time of commencement and the entry
of judgment." (41) Black's states that "'[p]roceeding' is a word much used to express the
business done in courts." (42) In In re Reed, the Bexar County District Attorney argued that
grand jury summonses were secret. (43) The court of appeals concluded that the grand jury
summonses were not "proceedings" under the statute (44) and that the Texas Code of
Criminal Procedure, unlike the federal rule, did not expressly provide that a grand jury
subpoena or summons was secret. (45) The San Antonio Court of Appeals stated:

 Viewed in the context of surrounding provisions, the term, "proceedings" as
used in Article 20.02(a) could reasonably be understood as encompassing
matters that take place before the grand jury, such as witness testimony and
deliberations. For example, article 20.02(b) makes clear that a person
"operating an electronic recording device" or "preparing a typewritten
transcription" must not disclose "anything transpiring before the grand jury,
regardless of whether the thing transpiring is recorded."[ (46)]

 We agree that the term "proceedings" as used in article 20.02 encompasses matters
that take place before the grand jury, including witness testimony and the grand jury's
deliberations. We conclude that the term "proceedings," as used in article 20.02, does not
refer to the identities of the grand jurors. (47) Therefore, the identities of the grand jurors in
appellant's case were not required to be kept secret under article 20.02. Furthermore, the
State cites to no authority, and we find none, supporting a conclusion that the identities of
the grand jurors are required to be kept secret. (48) Because there is no authority supporting
a conclusion that the grand jurors' identities are secret, we conclude that the trial court
erred when it denied appellant's request for disclosure of their identities.

 In this case, the trial court also denied appellant's request to interview the grand
jurors who were present when he made the false statements on the basis that the
proceedings were secret under article 20.02. However, the trial court allowed the State to
interview every grand juror who was present at that grand jury proceeding, and present
testimony from those grand jurors it determined supported its case of perjury against
appellant. (49) When the trial court allowed the State to reveal what transpired before the
grand jury, the secrecy of those proceedings had been pierced. (50) In United States v. Mays,
a federal district court stated:

 One well-recognized, long-established exception to the general rule that
grand jury testimony is secret is that a defendant accused of perjury before
a grand jury is entitled to review the entirety of his own testimony before the
grand jury. The reason for this rule is obvious. A statement or statements
taken out of context can appear to be misleading and false, whereas the
same testimony taken in its entirety is not false.[ (51)]


We agree. However, in appellant's case, there was no recording of appellant's testimony;
appellant's only option then was to interview all of the grand jurors who were present when
he testified. Therefore, we conclude that the trial court erred in denying appellant's request
to interview the grand jurors who were present when he testified before the grand jury and
allegedly committed aggravated perjury. Having determined error, we next conduct a harm
analysis.

C. Harm

 An appellate court must disregard nonconstitutional error that does not affect a
defendant's "substantial rights." (52) This Court may not reverse the judgment for
nonconstitutional error if, after examining the record as a whole, we have a fair assurance
that the error did not have a substantial and injurious effect or influence in determining the
jury's verdict. (53)

 Neither party has the burden of proof under rule 44.2(b). Rather, the
appellate court will examine the record for purposes of determining harm. 
If the error had no influence or only a slight influence on the verdict, it is
harmless. However, if the reviewing court is unsure whether the error
affected the outcome, the court should treat the error as harmful, i.e., as
having a substantial and injurious effect or influence in determining the jury's
verdict.[ (54)]


 In Lopez v. State, this Court explained that in a harm analysis "[w]e are not
concerned . . . with whether there was sufficient evidence on which [the appellant] could
have been convicted." (55) Quoting from the United Supreme Court case of Kotteakos v.
United States, we stated:

 [I]f one cannot say, with fair assurance, after pondering all that happened
without stripping the erroneous action from the whole, that the judgment was
not substantially swayed by the error, it is impossible to conclude that
substantial rights were not affected. The inquiry cannot be merely whether
there was enough to support the result, apart from the phase affected by the
error. It is rather, even so, whether the error itself had substantial influence.
If so, or if one is left in grave doubt, the conviction cannot stand.[ (56)]


A "grave doubt" is defined to "mean that, in the judge's mind, the matter is so evenly
balanced that he feels himself in virtual equipoise as to the harmlessness of the error." (57) 
In other words,"in cases of grave doubt as to harmlessness the petitioner must win." (58)

 In this case, the trial court did allow the State to present testimony from three grand
jurors and did allow the State to interview the nontestifying grand jurors. The State relied
heavily on the testimony of the those three testifying grand jurors. However, the jury did
not hear testimony from those grand jurors that the State did not call to testify, and the
record is silent regarding what their testimony may have been because the trial court did
not allow appellant to interview them. Although the State's case relied heavily on the grand
jurors' testimony, the trial court did not allow appellant to interview any of the grand jurors. 
We do not know what the nontestifying grand jurors would have revealed to appellant. In
the face of a silent record, we harbor grave doubts as to whether appellant was harmed
by the trial court's failure to allow him to interview the nontestifying members of the grand
jury who allegedly witnessed him commit perjury. (59) Therefore, because we are unsure
whether the error affected the outcome of appellant's trial, we must treat the error as
harmful, i.e., as having a substantial and injurious effect or influence in determining the
jury's verdict. (60) We sustain appellant's twelfth issue.

IV. Conclusion

 We reverse the trial court's judgment as to count one in the indictment and remand
for further proceedings as to that count, and we affirm the remainder of the trial court's
judgment. Because we have reversed count one, we need not address appellant's
remaining issues. (61)



 LINDA REYNA YAÑEZ,

 Justice

Do not publish.

Tex. R. App. P. 47.2(b).

Delivered and filed the

31st day of August, 2010.
1. See Tex. Penal Code Ann. § 37.03 (Vernon 2003); see also id. § 37.02 (Vernon 2003).
2. There is nothing in the record concerning the disposition of the civil lawsuit.
3. See Tex. Penal Code Ann. § 37.03; see also id. § 37.02.
4. It appears from the record that appellant had accused Espinosa of extortion.
5. Guerra did not recall specifically who administered the oath, but stated it would have been the bailiff
on duty at that time.
6. Appellant objected to Guerra's statement on the basis that it invaded the province of the jury;
however, the trial court overruled his objection.
7. Appellant's attorney informed Torres that an errata sheet allows a person to change his or her
responses to questions taken at a deposition. Torres stated that she had heard attorneys say that a person
may correct a misspelling "or something that was inaccurate like that, at the time, not testimony." However,
Torres admitted that she did not know what the rules allowed.
8. The errata sheet, which was admitted into evidence as defense exhibit number three, shows that
appellant changed his answers from "No" to "Yes" to the following two questions: (1) "Have you ever had a
relationship, sexual in nature--and what I mean by 'sexual in nature,' I mean the touching, stimulation of either
individual private parts or reproductive organs either with a hand or the mouth or the reproductive organ in
itself since you've been married?"; and (2) "Have you ever kissed any other woman other--any woman other
than your wife, an adult woman since you've been married."
9. Villalobos stated that he no longer represented Espinosa in that case.
10. As noted, in his errata sheet, appellant changed his answers to these questions to "yes."
11. Appellant's attorney at the time was present when he made the second statement to Ranger
Castaneda.
12. Appellant denied the allegations when he was interviewed by Ranger Escalon.
13. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); Guevara v. State, 152 S.W.3d
45, 49 (Tex. Crim. App. 2004)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).
14. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); Beckham v. State, 29 S.W.3d
148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).
15. Beckham, 29 S.W.3d at 151.
16. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).
17. Id. at 417.
18. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.-Corpus Christi 2002, pet. ref'd).
19. Tex. Penal Code Ann. § 37.03.
20. Id. § 37.02.
21. Count one alleged that appellant made a false statement when he testified before the grand jury
that he had not kissed Espinosa, touched her breasts, and become sexually aroused or excited during the
encounter.
22. See Hooper, 214 S.W.3d at 14-15 ("Juries are permitted to make reasonable inferences from the
evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.").
23. See id.; Powell, 194 S.W.3d at 506; Guevara, 152 S.W.3d at 49; Escamilla, 143 S.W.3d at 817.
24. Count two alleged that appellant made a false statement when stated at his deposition that he had
not kissed Espinosa, touched her breasts, and become sexually aroused or excited during the encounter.
25. Defense exhibit number one shows that the grand jury disapproved the complaint against appellant
on May 18, 2006, and State's exhibit one reveals that appellant was deposed on August 21, 2006.
26. See Tex. Code Crim. Proc. Ann. art. 21.14 (Vernon 2009) (providing that "an indictment for perjury
or aggravated perjury need not charge the precise language of the false statement, but may state the
substance of the same . . . .").
27. See Hooper, 214 S.W.3d at 14-15.
28. See id.; Powell, 194 S.W.3d at 506; Guevara, 152 S.W.3d at 49; Escamilla, 143 S.W.3d at 817.
29. See Watson, 204 S.W.3d at 414-15.
30. We note that at trial, Villalobos testified that appellant was aware of Espinosa's allegations, which
Espinosa testified included allegations that appellant touched her breasts, kissed her, and stated his penis
was "hard." During his deposition, which was held after the grand jury proceeding, appellant stated that
Espinosa's allegations were not true.
31. Appellant states in his brief that private parts only include the genitalia, anus, and buttocks.
32. See Tex. R. App. P. 38.1(i).
33. See Hooper, 214 S.W.3d at 13; Powell, 194 S.W.3d at 506; Guevara, 152 S.W.3d at 49; Escamilla,
143 S.W.3d at 817.
34. But see Sudds v. State, 140 S.W.3d 813, 817 (Tex. App.-Houston [14th Dist.] 2004, no pet.)
("Though venue must be established, it is not a "criminative fact" and thus not an essential element of the
offense.") (citing Boyle v. State, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), overruled on other grounds,
Gordon v. State, 801 S.W.2d 899, 911 n.13 (Tex. Crim. App. 1990)).
35. See Tex. R. App. P. 38.1(i).
36. Moreover, if the jury may reasonably conclude that the offense was committed in the county alleged,
then evidence of venue is sufficient. Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). For the
offense of aggravated perjury, venue is proper either in the county where the false statement was made or
in the county where the false statement is used or attempted to be used. See Tex. Code Crim. Proc. Ann.
art. 13.03 (Vernon 2005). "[D]eposition testimony by a party in a civil lawsuit is 'used or attempted to be used'
in the county in which the underlying lawsuit is pending as soon as that party makes a false statement in his
sworn deposition with the intent to deceive and with knowledge of the statement's meaning." Soliz v. State,
97 S.W.3d 137, 138 (Tex. Crim. App. 2003). In this case, Espinosa's civil lawsuit was pending in Willacy
County.
37. See Tex. R. App. P. 38.1(i).
38. This person did not testify at appellant's aggravated perjury trial.
39. The record is silent regarding whether appellant followed the trial court's instructions and filed a
brief.
40. Tex. Code Crim. Proc. Ann. art. 20.02 (Vernon Supp. 2009).
41. Black's Law Dictionary 1324 (9th ed. 2009).
42. Id.
43. In re Reed, 227 S.W.3d 273, 275 (Tex. App.-San Antonio 2007, no pet., orig. proceeding).
44. We note that the Legislature later amended 20.02, and the statute now provides that a grand jury
subpoena or summons related to a grand jury investigation is secret to the extent necessary to prevent the
unauthorized disclosure of a matter before the grand jury. See Tex. Code Crim. Proc. Ann. art. 20.02(h).
45. In re Reed, 227 S.W.3d at 276.
46. Id.
47. See id.
48. See Op. Tex. Att'y Gen. No. GA-0422 (2006) (stating that "the grand jury organization process is
conducted in open court. As a practical matter, then, grand jurors' identities will become public during the
grand jury organization process. . . .  [W]e can find nothing in the law that overcomes the presumption that
[grand jury lists] are public information; therefore, a clerk or a judge has no duty to keep a grand jury list
confidential after the clerk has opened the envelope containing the names of prospective grand jurors.").
49. See Wisdom v. State, 42 Tex. Crim. 579, 61 S.W. 926, 927 (1901) ("So the evidence of the witness
given before the grand jury may be introduced against him under a charge of perjury, through the mouth or
mouths of the grand jurors.").
50. Stern v. State, 869 S.W.2d 614, 622 (Tex. App.- Houston [14th Dist.] 1994, pet. denied) (providing
that grand jury proceedings are generally secret, but acknowledging that "Texas courts have permitted the
veil of grand jury secrecy to be pierced in only a few instances."); see In re 5 Byrd Enters., 980 S.W.2d 542,
543 (Tex. App.-Beaumont 1998, no pet.) (recognizing that in Texas, courts have permitted the veil of grand
jury secrecy to be pierced in a few instances including for the purposes of, among other reasons, impeaching
a witness or proving perjury).
51. United States v. Mays, 460 F. Supp. 573, 575 (E.D. Tex. 1978).
52. Tex. R. App. P. 44.2(b).
53. Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). 
54. Mitten v. State, 228 S.W.3d 693, 696-97 (Tex. App.-Corpus Christi 2002, pet. dism'd).
55. 288 S.W.3d 148, 178 (Tex. App.-Corpus Christi 2009, pet. ref'd).
56. Id. (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).
57. Id.
58. Gamble v. Sate, 199 S.W.3d 619, 624 (Tex. App.-Waco 2006, no pet.).
59. See id. (concluding that "[i]n the face of a silent record, [there were] grave doubts as to whether
Gamble was harmed by the [trial] court's failure to admonish him of the deportation consequences of his
plea").
60. See Mitten, 228 S.W.3d at 696-97.
61. Appellant's remaining issues (two and fourteen) concern the factual sufficiency of the evidence
supporting his conviction of count one. See Tex. R. App. P. 47.1.